PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JULIO JUARBE, Defendant and Appellant.

No. 4566. Argued April 21, 1932.—Decided May 9, 1932.

*J. Valldejuli* for appellant. *E. Díaz Viera, Assistant Fiscal,* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

The following information was filed against the defendant in this case:

"The district attorney files this information against Julio Juarbe, for the offense of BURGLARY IN THE FIRST DEGREE, a felony committed as follows: The said defendant Julio Juarbe, on or about the 30th day of August 1930, and at San Juan, P. R., which forms part of the judicial district of the same name, unlawfully, wilfully, and maliciously, entered, at night time, the establishment used as a *cafetín* belonging to Vicente Dumont, with the intention then and there of committing larceny."

Upon the case being tried before a jury in the District Court of San Juan, the defendant was found guilty, and he was sentenced by the court to a year's imprisonment in the penitentiary at hard labor.

Feeling aggrieved by that judgment, the defendant appealed to this Court, and he assigns in his brief the following errors:

"*First:* That the lower court erred in permitting the witnesses of the People of Puerto Rico, Sixto M. Saldaña and Andrés A. Lugo, to testify.

"*Second:* That the lower court erred in overruling the motion for a directed verdict of acquittal, on the grounds that the evidence in this case was not sufficient to justify a conviction and that a prima facie case against defendant had not been established.

"*Third:* That the verdict in this case is contrary to the law and the evidence adduced in the case."

Let us examine the first assignment of error. The district attorney offered in evidence the testimony of Sixto M.

Saldaña and Andrés Lugo. The defendant through his attorney, objected to this evidence, on the ground that it was offered to establish that the accused had served other sentences for other offenses, and that the legal requirements had not been complied with before the witnesses could testify. He also claimed that it had not been established by proper evidence that defendant had committed the offense charged. The court admitted the evidence.

The witness Saldaña testified that he was the warden of the penitentiary; that he had in his hands the criminal record of Julio Liceaga, who is the defendant in this case. The criminal record was offered in evidence and admitted by the court over the objection of defendant's attorney. The same objection was made to witness Andrés Lugo, who practically testified the same as Saldaña.

The admissibility of evidence which tends to show, or shows, that the accused has committed a crime entirely independent of the offense charged, has been amply considered by the courts of justice. The general rule is that this evidence is not admissible.

The natural and inevitable tendency of the judges, and more so of the juries, is to give too much weight to this kind of evidence, which in many instances can result in a verdict of conviction irrespective of the guilt or innocence of the accused of the offense charged. The unquestionable probatory value of this kind of evidence has made the rule excluding it strictly necessary to avoid the danger of a conviction when the evidence presented is insufficient to prove the offense charged against a defendant. This evidence, then, is generally declared inadmissible, not because it lacks probative force but rather because it may be attributed undue weight. John Norton Pomeroy, in the argument in the case of *People* v. *Stout,* 4 Park Cr. 97, states:

"In its administration of criminal jurisprudence, the civil law allows and requires such evidence. It investigates the antecedent character, disposition, habits, associates, business,—in short, the entire

history of an accused person, to discover whether it is probable that he would commit the alleged crime. English and American criminal law, in its practical administration, confines itself to the investigation of the very crime charged, and restricts judicial evidence to circumstances directly connected with and necessary to elucidate the issue to be tried. These two systems are diametrically opposed to each other, and whatever may be said of their comparative merits, the rule of the common law is so firmly established that it lies at the very foundation of criminal procedure, as an inseparable element of trial by jury. Trained judicial minds may be able to eliminate from a mass of irrelevant and general criminative facts those which directly bear upon the crime charged against the prisoner; but the very character of juries, and the theory of trial by jury, require that all prejudicial evidence tending to raise in their minds an antipathy to the prisoner, and which does not directly tend to prove the simple issue, should be carefully excluded from them.''

In the case of *State* v. *Saunders,* 12 Pac. 445, the Supreme Court of Oregon, speaking through Mr. Judge Thayer, declared as follows:

''Place a person on trial upon a criminal charge, and allow the prosecution to show by him that he has before been implicated in similar affairs, no matter what explanation of them he attempts to make, it will be more damaging evidence against him, and conduce more to his conviction, than direct testimony of his guilt in the particular case. Every lawyer who has had any particular experience in criminal trials knows this,—knows that juries are inclined to act from impulse, and to convict parties accused upon general principles. An ordinary juror is not liable to care about such a party's guilt or innocence in the particular case if they think him a scapegrace or vagabond. That is human nature.''

Now, then, this rule has its exceptions, but the court must be very careful in admitting evidence of this character, so that the rights of defendant, as well as those of the state, may be duly protected.

According to Wigmore—Evidence, 1923 ed., vol. 1, p 419 —some suppose ''that the object of the rule is merely to *show mercy to the guilty one,* to give him a final chance for life and liberty by artificially handicapping the prose-

cution, . . . On the contrary, the object is to prevent a person not guilty of the present charge from being improperly found guilty of it.'' To this we must add the principle that all persons are presumed to be innocent until found guilty by a competent court. This presumption of innocence must accompany the accused until he is found guilty and it does not seem just to admit evidence of his criminal record, unless it is an exceptional case included among the exceptions to the general rule. The acquittal of a guilty person is preferable to the conviction of an innocent one, although the person has committed other offenses of the same nature of the offense charged. The law makes no distinction between the good and the bad. The presumption of innocence favors all, and when an accused is brought before a court, no matter what his previous reputation may be, he is entitled to be tried with the fairness due.

With these principles established, we must decide if the admission of the criminal record of the accused is comprised within the exceptions to the general rule. Evidence of a crime independent of the one charged, can be admitted in exceptional cases to prove knowledge, intent, purpose, or plan. The process of proof of other offenses in the cases comprised in the exceptions to the general rule is not always the same. Referring to evidence of intent, Wigmore states at page 615 of his work on Evidence: ''that the peculiar feature of this process of proof is that *the act itself is assumed to be done,*— either because (as usually) it is conceded, or because the jury are instructed not to consider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent.''

The same author, at page 609 of his aforesaid work, says:

''. . . The peculiarity of Intent, as a 'factum probandum', is that an act is assumed as done by the defendant, and the issue is as to the kind of state of mind accompanying it. Design or Plan, however (with reference to present bearings), is not a part of the issue, an element of the criminal fact charged, but is the preceding mental con-

·dition which evidentially points forward to the doing of the act designed or planned (*ante,* §§237, 242). Thus, the peculiarity of Design is that the act is not assumed to be proved, and the design is used evidentially to show its probable commission. It is obvious. that something more definite and positive is here involved than in. the case of Intent. In proving Intent, the act is conceded or as-- sumed; what is sought is the state of mind that accompanied it. In proving Design, the act is still undetermined, and the proof is. of a working plan, operating towards the future with such force as to render probable both the act and the accompanying state of mind. The Intent is a mere appendage of the act; the Design is a force producing the act as a result.''

Although the act of entering a house with the object of committing larceny shows a purpose or plan, however, the criminal record of the accused, which begins from March 13, 1906, was admitted solely and exclusively to add to the evidence presented the complement of intent.

In the criminal record of the accused, admitted by the court, there appear some judgments of conviction against the accused for various crimes of forgery, burglary, and petit larceny. There is no connection between these crimes and the offense charged in the present information.

As to the weight of this evidence, the court instructed the jury as follows:

''In this case the district attorney has offered in evidence two prior convictions of the accused.

''Of course, the district attorney did not make this offer in order to prove that this man is guilty of the crime now charged, because the court would not have admitted it, and that is not the effect the jury should give to it. Evidence of prior commission of crimes by the accused does not prove a subsequent offense. That a man has. not behaved well in the past does not mean that he will behave. similarly in the future. Prior convictions only tend to establish before you the intent of the accused, if you consider reasonable the circumstantial evidence presented to you. Other offenses committed by the accused would not establish that the accused committed the crime with which the district attorney now charges him.''

The instructions of the court to the jury clearly show that the evidence was offered for the purpose of proving the intent, and even if it was not so offered, the court so instructed the jury.

Disregarding this evidence of the criminal record, the proof presented by the district attorney is limited to the testimony of Vicente Dumont and Augusto Beauchamp.

Vicente Dumont stated that he lives in Santurce at Blanca Cerra Street; that he has an establishment, a *cafetín* called "La Campana"; that he was asleep and when he heard a noise he called his employee Augusto Beauchamp and a voice answered: "I am Augusto"; that he called Augusto again telling him: "Get up, there is a person inside and it must be a thief"; that he got up and went to the door and saw the accused standing in the middle of the sidewalk; that he told Beauchamp to call a policeman; that the policeman came and the accused was very nervous when he saw the officer; that then they went into the establishment and the door had been forced and the accused did not want to go in and the policeman searched him and found on him 94 cents; that the witness had missed 94 cents from the drawer; that he had collected the money from the drawer that night and left 94 cents; and he does not remember how much he made that day; that he did not tell the policeman how much he missed from the drawer and it was when they searched the accused that he stated that he missed 94 cents which was the amount that the defendant had in his pockets; that accused did not run or walk when he heard the voice of the witness and was there when the policeman arrived.

Witness Augusto Beauchamp testified that about 1:30 a. m. Dumont heard a noise and called him; that he went out to the street and found Julio Juarbe standing there, and the door had been forced; that he asked the accused what he was doing there, and he answered "nothing"; that he thinks that accused was a little nervous and he started walking and the witness told him: "Do not go until I bring the policeman";

that he saw the accused hesitate and try to walk but could not do so; that he did not hold him and went to get the policeman, the accused remaining with Vicente Dumont; that the policeman searched Juarbe and found 94 cents on him, and that in the drawer 94 cents were missing; that witness went for the policeman who was at a short distance and when he arrived they entered the house, witness walking in front, Vicente Dumont following, then the policeman and the accused; that when the policeman searched the accused and found 94 cents on him, he asked how much money was in the drawer and was told that the same had been overturned.

The defendant Julio Juarbe testified that he was playing domino in a *cafetín* and that at 12 o'clock at night he changed the chips and was given a one-dollar bill which he changed in order to buy 5 cents of cigarettes and a box of matches; that as he was going home he met witness Augusto Beauchamp who told him: "Friend, please wait here while I get a policeman who is at the stop"; that after the man had gone Vicente Dumont and his wife came out, that witness was standing in the middle of the street and told Vicente Dumont that as they had arrived, he was going home because it was late; that Vicente told him to wait, and then that person came with the policeman, who inquired what had happened, and was informed that the door had been forced; that they all went in and searched and the policeman asked: "Do you miss anything?" and someone answered: "Nothing is missing because I was robbed once and we do not leave money here"; that then the policeman said that he could do nothing; that Vicente Dumont told the policeman that when he heard noise he called Augusto and received an answer from inside: "This is Augusto"; but that the voice that answered him seemed like the defendant's; that the policeman then searched him and finding 94 cents asked: "Does this belong to you?"; that he was answered: "Yes sir, I miss 94 cents which I had"; that the policeman then asked him what his occupation was and defendant answered that he was a carpenter and a laundry-

man; that he remained there waiting for the policeman and that if he had committed an offense he would not have waited until he arrived.

These are the salient points in the evidence introduced in this case. Together with this evidence the lower court admitted the documents forming the criminal record of the accused. When they were admitted, circumstantial evidence had already been offered to the court establishing that a noise had been heard in the house and that a door was open and had been forced. Until this moment, what evidence had been offered to prove the connection between the accused and said facts? Only his presence on the sidewalk of the street, in front of the door of the house, just before the noise was heard inside the building and 94 cents were found in his pockets. As to this fact, Vicente Dumont testified that he did not tell the policeman that he had missed any money from the drawer, until after the accused had been searched.

The two witnesses for the prosecution were present when this search was made. They testified that the policeman asked them how much they missed, and Dumont answered that 94 cents. Did Dumont have knowledge of the amount of money Juarbe had in his possession, when he fixed and mentioned for the first time the amount he had missed? Although the evidence tends to so establish, this fact is not clearly established. About this fact there is a gap in the evidence for the prosecution that could have been covered by the policeman who did not testify and whose absence at the trial has not been explained. The answer is given by the testimony of the accused himself and which has not been denied in this respect. The accused testified that when the policeman found the 94 cents he asked: "Does this belong to you?" and that he was answered: "Yes, sir, I miss 94 cents which I had." If Dumont had told the policeman, before the search, that he had missed 94 cents, the finding of said amount on the accused would have had strong probative value; but the evi-

dence is weakened to the extent of becoming doubtful when the amount is fixed and mentioned after the search was made.

It is also to be noted that Dumont's memory failed him when he attempted to remember the amount he took from the cash drawer as the day's earnings, yet he remembered the exact amount and coins he left in the drawer. Although it is not our intention to consider now the weight of the evidence offered, however, it is natural and reasonable that we should examine the proof submitted to the lower court by virtue of which it reached the conclusion that the documents offered by the district attorney were admissible. If only the oral evidence, consisting of the testimony of Dumont and Beauchamp, had been submitted to the jury, we doubt very much whether a verdict of conviction would have been rendered.

It would not be unreasonable to assume that the written evidence influenced the verdict of the jury, but it is enough for us to know that it could have exercised some influence, to the prejudice of the rights of the accused. The court did not instruct the jury not to consider the evidence of the criminal record in case it considered that the act charged in the information had not been established independently of the intent.

Nor has any connection been established between the offenses committed by the accused and the act charged in the information. In some instances, evidence of previous offenses not connected with the offenses charged has been admitted. The admission of this evidence depends upon the nature of the case. Thus, in the case of *Trogdon* v. *Commonwealth*, 31 Gratt. 862, the court said that in prosecutions for uttering forged notes, for passing counterfeit money and for receiving stolen goods, evidence is admissible of other transactions of a like character, although they may amount to distinct offenses, provided they are not too far removed. The limits as to time and circumstances in such cases are to be determined by the court in the exercise of its discretion. The

purpose of this evidence is simply to show *mens rea* on the part of the accused.

In the case of *Prettyman* v. *United States,* 180 Fed. 30, the court held:

". . . The thoroughly established general rule is that acts not charged in an indictment cannot be proved, among other reasons, because no testimony is pertinent unless it relate to the matters charged in the indictment and as to which an issue is formed by the plea of not guilty, and because the accused, having no notice that testimony as to any other act would be offered, could not be prepared to meet it. But to this general rule there is at least one important exception, and where the intent with which an act charged to be criminal has been done becomes important, as it necessarily is in this case, then, within certain limits, proof of similar acts of the accused is admissible in order to show the intent with which the act charged in the indictment was done. We think, however, that such similar acts can be proved only when they were done sufficiently near, in point of time, to the act charged as fairly to throw some light upon the question of intent; when the similar act is so related in kind to the one charged as to illustrate the question of intent; when the similar acts are in fact acts of the same general nature or closely related to the transactions out of which the alleged criminal acts arose; and when, in fact, the similar acts are acts of the person accused against whom that particular proof is directed."

The basis for the admission of other offenses is the logical connection of these offenses with the offense charged in the complaint. *People* v. *Cunningham,* 66 Cal. 668.

In the case of *Towne* v. *People,* 89 Ill. App. 258, the court, after admitting the fact that the courts in various jurisdictions differ as to the application of the exceptions to the general rule, expressed itself as follows:

"However, all are substantially agreed on the proposition that unless there is some logical connection between the two offenses, either because they constitute a part of the *res gestae,* or because they are part of the same plan or system, or because one tends to show *scienter* in the other, the general rule prevails and the exception is not applied."

There is abundant jurisprudence supporting the principle that a proper connection must be established between the offense charged and other offenses offered as evidence.

In the case of *People* v. *Henry*, 88 N. W. 77, the accused was charged with the crime of burglary. Evidence was offered of two previous convictions of larceny. The accused was found guilty. Judgment was reversed and a new trial ordered. Justice Grant, who delivered the opinion of the court in that case, said:

"This evidence was incompetent. There was no connection whatever between the two former crimes and the one for which the respondent was on trial. There was nothing to show that the larcenies for which he was then convicted were committed under circumstances similar to those in this case. Besides, the former crimes were not near in time to that of the crime here charged. . . This is a clear case of introducing evidence of one crime to prove the commission of another."

In the case of *Commonwealth* v. *Campbell*, 155 Mass. 537, 30 N.E. 72, testimony was given referring in part to the offense with which the accused was charged and in part to the commission by him of other offenses. The court held that the testimony was admissible only in so far as it referred to the offense under consideration and rejected in so far as it tended to prove that the accused was a notorious criminal. *People* v. *Jones*, 31 Cal. 566; *People* v. *McNutt*, 64 Cal. 116; *State* v. *Johnson*, 38 La. Ann. 686.

We believe the lower court erred in admitting and submitting to the jury the criminal record of the accused.

The second error assigned is that the court erred in denying the motion for a directed verdict. Counsel for the accused based this request on the fact that the information stated that the offense was committed on August 30, 1930, and the evidence proved it was committed in the morning of July 29, 1930. We believe the court committed no error in denying defendant's motion. *People* v. *Ramos*, 28 P.R.R. 749; *People* v. *Miller*, 137 Cal. 642.

440

The third error assigned is that the verdict in this case is contrary to law and the evidence introduced. The evidence shows that somebody entered the residence of Vicente Dumont, inasmuch as shortly after a noise was heard inside the house, a door which was locked was found opened and forced. This fact together with the presence of the accused on the sidewalk of the street, although he did not try to run away and waited for the policeman to arrive, and the finding of 94 cents in his pockets, which one of the witnesses said was missing, possibly after knowing exactly the amount found on the accused, are elements of proof and circumstances for the jury to pass upon. *People* v. *Minney,* 155 Mich. 534; *Anderson* v. *Commonwealth,* 244 S.W. 315; *People* v. *Flynn,* 73 Cal. 511.

For the above reasons we do not feel justified in sustaining this assignment of error.

The judgment appealed from must be reversed and a new trial granted.

Mr. Justice Hutchison concurs in the reversal of the judgment, but he is of the opinion that the defendant should be discharged.